IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JOCELYN R. JONES, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:13-CV-818-A |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISIONER | § | |
| OF SOCIAL SECURITY, | § | |
| DEFENDANT. | § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b).  The Findings, Conclusions, and Recommendation

of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I.    STATEMENT OF THE CASE

Plaintiff Jocelyn R. Jones ("Jones") filed this action pursuant to Sections 405(g) and

1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security denying her claims for a period of disability and disability

insurance benefits under Title II and for supplemental security income ("SSI") under Title XVI

of the Social Security Act ("SSA").  In December 2010, Jones protectively applied for disability

insurance benefits ("DIB") and SSI, alleging that her disability began on December 12, 1989.[1]

(Tr. 107-19.)

---

[1] At the hearing before the administrative law judge ("ALJ"), Jones amended her alleged onset date to December 21, 2010.  (Tr. 39-40.)

1

Her applications were denied initially and on reconsideration, and Jones requested a hearing before an ALJ. (Tr. 45-50, 55-62.) On June 27, 2012, the ALJ held a hearing, and on July 12, 2012, the ALJ issued a decision that Jones was not disabled. (Tr. 9-40.) Jones filed a written request for review on July 25, 2012, and the Appeals Council denied her request for review on August 8, 2013, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-6.)

## II.    STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920 (2009). First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v.*

2

*Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000).  Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1.  20 C.F.R. §§ 404.1520(d), 416.920(d).  Fourth, if disability cannot be found based on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work.  *Id.* §§ 404.1520(e), 416.920(e).  And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience.  *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).  At steps one through four, the burden of proof rests upon the claimant to show she is disabled.  *Crowley*, 197 F.3d at 198.  If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments. *Id.*

   A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  It is more than a mere scintilla, but less than a preponderance.  *Id.*  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.  *Id.*  This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to

determine if the evidence is present.  *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*,

837 F.2d at 1383.[2]

### III.   ISSUE

In her brief, Jones presents the following issue to the Court:  Whether the ALJ gave

proper weight to the opinion of Jaya Trivedi, M.D. ("Dr. Trivedi"), Jones' treating physician.

### IV.   ADMINISTRATIVE RECORD AND ALJ DECISION

The ALJ, in her July 12, 2012 decision, found that Jones had not engaged in any

substantial gainful activity since December 21, 2010, the alleged onset date.  (Tr. 14.)   She

further found that Jones had the "severe" impairment of central core myopathy.  (Tr. 14.)   Next,

the ALJ held that Jones did not have an impairment or combination of impairments that met or

equaled the severity of any impairment in the Listing.  (Tr. 15.)  As to Jones' residual functional

capacity ("RFC"), the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to lift and carry ten pounds
> occasionally and five pounds frequently.  She can stand and walk two hours in an
> eight-hour workday and sit six hours in an eight-hour workday.  The claimant
> must not squat, crawl, kneel, or climb, and she must be able to stand up to change
> positions and stretch at will.

(Tr. 15 (emphasis omitted).)

The ALJ opined, based on this RFC assessment, that Jones was not able to perform her

past relevant work.  (Tr. 17.)  The ALJ found, however, that Jones was able to perform a number

of jobs that existed in significant numbers in the national economy during the period at issue.

(Tr. 18.)  Thus, the ALJ concluded that Jones was not disabled.  (Tr. 18-19.)

---

[2] There are four elements of proof that must be weighed in determining whether substantial evidence of
disability exists: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3)
the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.
*See Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

## V.    DISCUSSION

Jones makes several arguments regarding whether the ALJ gave proper weight to her treating physician.  First, Jones argues that the ALJ's RFC determination is not supported by substantial evidence because it is inconsistent with the medical source statement of Dr. Trivedi. (Pl.'s Br. at 4-5.)  Furthermore, Jones claims that the ALJ erred in giving "some weight" to the medical opinions of Dr. Trivedi.  (Pl.'s Br. at 6-8.)  Jones also argues that the ALJ erred in failing to give controlling weight to the medical source statement of Dr. Trivedi without applying the required factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c).  (Pl.'s Br. at 7-8.)  Finally, Jones argues that the ALJ erred in failing to recontact Dr. Trivedi for clarification or additional evidence regarding her medical opinions after declining to give them controlling weight.  (Pl.'s Br. at 9.)

In a medical source statement dated May 29, 2012, Dr. Trivedi opined the following: (1) Jones could continuously sit or stand for five to ten minutes at one time; (2) in an eight-hour work day Jones needed to lie down and rest for one to two hours more than two to three times, and could sit and stand/walk for less than two hours; (3) Jones could lift and carry less than ten pounds on an occasional basis and never carry ten pounds or more; (4) Jones could never climb stairs, run, or stand up from the floor, has difficulty lifting her arms above her head, and could only walk short distances; (5) Jones needed a job that permitted shifting positions at will from sitting, standing, or walking; and (6) Jones' condition is permanent and will worsen over time. (Tr. 269-72.)

As to Dr. Trivedi's treatment of Jones, the ALJ stated:

> The claimant's treating physician submitted a detailed medical source statement in May 2012 (Exhibit 5F).  He [sic] noted that the claimant's condition is progressive, however, the limited examination findings show stable muscle strength (Exhibits 5F; 1F, pp. 18, 19).  He [sic] further noted that the claimant's

condition could only be treated symptomatically to improve independence in activities of daily living, but that despite her reports of chronic pain, she received no prescription pain medication through his [sic] office (Exhibit 5F)  No evidence of treatment through other providers is in evidence.  The claimant's wide range of activities, which includes pursuing higher level education and working part-time, indicate that she has been able to function independently.

The treating physician opined that the claimant would be unable to sit, stand, or walk for vocationally relevant periods, and that she would be unable to lift ten pounds even occasionally.  The claimant would required [sic] extended unscheduled breaks throughout the workday and, in the treating physician's opinion, would have difficulty sustaining fulltime employment "in any capacity." Although this physician has had a longitudinal treating relationship with the claimant dating to 2009, the medical evidence of record consisting of two routine follow-up encounters in 2010 does not support this degree of limitation.  That the claimant has consistently maintained part-time work while attending college further contradicts this assessment.  Given the chronic nature of the claimant's condition, and in viewing the evidence in the light most favorable to the claimant, the undersigned accords this some weight in limiting her to less than sedentary work.

(Tr. 16-17.)

In reaching her RFC determination, the ALJ reviewed the medical evidence in the record, including the following: (1) an examination dated March 25, 2010 in which Dr. Trivedi conducted a neuromuscular evaluation, assessing Jones' muscle strength (Tr. 16; *see* Tr. 221-40); (2) an examination dated October 29 2010, in which Dr. Trivedi conducted a follow-up neuromuscular evaluation (Tr. 16; *see* Tr. 241-52); (3) a physical RFC assessment, dated February 7, 2011 from State Agency Medical Consultant ("SAMC") Roberta Herman, M.D. ("SAMC Herman") (Tr. 17; *see* Tr. 253-60); (4) another physical RFC assessment dated June 2011, from SAMC Randal Reid, M.D. ("SAMC Reid") (Tr. 17; *see* Tr. 261-68); (5) the May 29, 2012 medical source statement completed by Dr. Trivedi, summarized above (Tr. 16-17; *see* Tr. 269-72); and (6) Jones' testimony (Tr. 16-17; *see* Tr. 23-40).  The ALJ noted in her opinion that neuromuscular testing from both of Dr. Trivedi's examinations in 2010 "showed good muscle strength in the upper extremities and normal muscle strength in the lower extremities."  (Tr. 16,

238-39.)   The ALJ then went on to observe that, "although testing showed only fair muscle strength in the hip flexors in March 2010, in October 2010 the claimant had good muscle strength in the hip flexors."  (Tr. 16.)  In addition, the RFC assessments performed by SAMCs Herman and Reid found Jones able to occasionally lift up to twenty pounds, frequently lift up to ten pounds, and sit for about six hours in an eight-hour work day.  (Tr. 254, 262.)  SAMC Herman found the plaintiff able to stand/walk for six hours in a day, and SAMC Reid found her able to stand/walk for at least two hours in a day.  (Tr. 254, 262.)  In addition, the ALJ stated:

> The claimant is a twenty-two-year-old woman currently enrolled in college-level courses.  She is working part-time as a catering representative.  She alleges disability secondary to complications of central core myopathy.  At the hearing, she testified she has chronic fatigue and weakness in her extremities. She further testified that sitting for too long causes numbness in her lower extremities.  Despite these ongoing complications, no treatment in evidence postdates the amended onset date.  This lack of current treatment in conjunction with her ongoing education and part-time work is, in large part, inconsistent with an impairment of disabling severity.

(Tr. 16; *see also* Tr. 17 ("The claimant's wide range of activities, which include pursuing higher level education and working part-time, indicate that she has been able to function independently.")

RFC is what an individual can still do despite her limitations.  SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).  It reflects that individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis.  *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule.  SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most.  *Id.*  The RFC is a function-by-function assessment, with both exertional and nonexertional factors to be considered, and is based upon all of the relevant evidence in the case record.  *Id.* at 3-6.  The responsibility for determining a

claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7. Controlling weight is assigned to the opinion of a treating physician if it is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). However, the determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d)*; see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527." 209 F.3d 448, 453 (5th Cir. 2000); *see* 20 C.F.R. § 416.927. Under the statutory analysis of 20 C.F.R. §§ 404.1527 and 416.927, the ALJ must evaluate the following: (1) examining relationship; (2) treatment relationship, including the length, nature, and extent of the treatment relationship, as well as the frequency of the examination(s); (3) supportability; (4) consistency; (5) specialization; and (6) other factors which

"tend to support or contradict the opinion."   20 C.F.R. § 404.1527(c); *see also* 20 C.F.R. § 416.927(c); SSR 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).

Based upon the above evidence, it is clear that substantial evidence supports the ALJ's RFC determination.  The ALJ specifically noted that Jones' pursuit of higher-level education and part-time employment indicated that she has been able to function independently.  (Tr. 17.) Furthermore, in analyzing the medical evidence, the ALJ referenced the opinions of Dr. Trivedi and SAMCs Herman and Reid.  (Tr. 17.)  Considering the conflict between Dr. Trivedi's medical source statement and actual treatment records, as well as the opinions of SAMCs Herman and Reid, who found that Jones could perform light work, the ALJ gave "great weight" to Jones' testimony regarding her symptoms, and found her to be "more limited than determined initially and at reconsideration," capable of performing only a "limited range of sedentary work."  (Tr. 17.)  The ALJ adequately explained the reasoning for her RFC determination and for giving less weight to certain evidence, and exercised her responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into her RFC assessment that were most supported by the record.  *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.").  Because there is substantial evidence in the record that supports the ALJ's RFC determination, the Court concludes that remand is not required based on Jones' general argument to the contrary.

In deciding not to give controlling weight to Dr. Trivedi's medical opinions concerning the plaintiff's exertional limitations, the ALJ was required to consider the factors listed in 20 C.F.R. §§ 404.1527(c) and 416.927(c).  As to factors one and two under which the ALJ evaluates the examining and treatment relationship between Jones and Dr. Trivedi, the ALJ thoroughly

reviewed Jones' treatment history with Dr. Trivedi, which consisted of a review of the records in which Jones was examined and treated by Dr. Trivedi, as well as the medical source statement completed by Dr. Trivedi. Tr. 16-17; *see* 20 C.F.R. §§ 404.1527(c)(1)–(2), 416.927(c)(1)–(2). In addition, it is clear that the ALJ recognized Dr. Trivedi as Jones' treating physician as she specifically referred to her as such. (Tr. 16-17.) As to factors three, four, and six, under which the ALJ evaluates the supportability and consistency of physician's opinion, as well as any other factors which "tend to support or contradict the opinion," the ALJ pointed out the internal inconsistencies between Dr. Trivedi's own examination records and the medical source statement, as well as the inconsistencies between her treatment records and the other medical evidence in the record. Tr. 16-17; *see* 20 C.F.R. §§ 404.1527(c)(3)–(4), (6), 416.927(c)(3)–(4), (6). As to factor five under which the ALJ considers whether the physician is a specialist, Jones, citing to Dr. Trivedi's online professional profile at UT Southwestern Medical Center, claims that Dr. Trivedi is a neurologist. However, Jones does not point to any evidence in the record indicating that Dr. Trivedi is a specialist of any sort. *See* 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3). Thus, her opinion is entitled to no additional weight under this factor.[3] Because the ALJ properly considered the treatment records and opinions of Dr. Trivedi and went through the factors listed in 20 C.F.R. §§ 404.1527(c) & 416.927(c) before giving Dr. Trivedi's May 2012 medical source statement less than controlling weight, the Court concludes that the ALJ did not err.

Jones' final argument is that, because the ALJ did not give Dr. Trivedi's medical opinions controlling weight, the ALJ was "required to seek clarification or additional evidence from Dr. Trivedi about her opinions regarding Plaintiff's limitations." (Pl.'s Br. at 9.) The Court notes,

---

[3] Moreover, even assuming the ALJ erred in not recognizing that Dr. Trivedi was a specialist, any such error would be harmless as substantial evidence supports the ALJ's treatment of Dr. Trivedi's opinions in the medical source statement.

however, that this argument appears to be based on a misunderstanding of the law.  The Fifth Circuit Court of Appeals stated in *Newton v. Apfel* that "if the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e)."  *Newton*, 209 F.3d at 453.  However, the cited regulation was amended, effective March 26, 2012 and the requirement to recontact the treating physician provision cited in *Newton* was deleted.  *See Stewart ex rel. J. F. v. Colvin*, No. 1:13CV22-LG-JMR, 2014 WL 1569542, at *8 (S.D. Miss. April 17, 2014); Requirement to Recontact Medical Sources, 77 Fed. Reg. 10,651, 10,655, 10,656 (Feb. 23, 2012) (to be codified at 20 C.F.R. §§ 404.1512, 416.912) ("[T]he regulations regarding 'recontacting medical sources' [in 20 C.F.R. 404.1512(e)] have changed since the ALJ's decision").  Under the new regulations, the decision to recontact a treating source is a matter of the ALJ's discretion.  *Stewart*, 2014 WL 1569542, at *8; *see* 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1).  Under the revised regulations, the ALJ *may* recontact the treating physician if the ALJ has insufficient evidence to determine whether the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520b(c), 416.920b(c).

In this case, the ALJ found, as set forth above, that Dr. Trivedi's opinions in the medical source statement were inconsistent with the other evidence in the record.  The ALJ did not err in failing to recontact Dr. Trivedi.  Consequently, remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED
## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **December 17, 2014** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED December 3, 2014.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv